## McMurray *et al. v.* Emerson.

*(Circuit Court, D. Massachusetts.* November 21, 1888.)

PATENTS FOR INVENTIONS—INFRINGEMENT—MEASURE OF DAMAGES.

The measure of damages for infringement of a patent is to be ascertained by considering the amount of profits or savings made by defendant by the use of the infringing device, beyond what he could have made by the use of tools free to the public.

At Law. Action for damages.

This was an action brought by Louis McMurray and others against George R. Emerson for infringement of reissue patent No. 8,781, dated July 1, 1879, for an invention of Abel Barker, and reissue patent No. 10,672, dated December 15, 1885, for an invention of Jabez A. Bostwick, each invention being for an improvment in tools for soldering the caps or covers on tin cans, and both patents being owned by the plaintiffs as assignees.

*Causten Browne* and *Benjamin Price,* for plaintiffs.

*A. H. Briggs,* for defendant.

NELSON, J., *(charging jury.)*  In this suit the plaintiff seeks to recover damages for the infringement of two patents of which he is the owner, the Barker patent and the Bostwick patent. These patents relate to improvements in tools for soldering tin cans. There does not seem to be any dispute between the parties as to the ownership of the patents, nor as to their validity. The defendant concedes that the plaintiff owns them, and that they are valid, and also that he has infringed them by the use of a tool in his tin-canning establishment; and that tool has been produced and exhibited to the jury. The defendant also concedes, and the plaintiff accepts the concession as true, that the tool embodying the improvements has been used by the defendant in soldering 50,000 tin cans. In regard to the rule of law applicable generally to the case as to the construction which the jury are to give to the patents, it is not necessary for the court to make any extensive or elaborate explanation, because they will not be troubled with the consideration of any question as to their validity, or as to the defendant's infringement; and it is only necessary for the court to read to the jury two prayers which the plaintiff has requested the court to give upon this branch of the case, and to say that the court adopts these prayers as containing a correct exposition of the law. The defendant concedes also that these prayers state the rule of law correctly.

In regard to the Barker patent, the plaintiff requests the court to give, and the court does give, this instruction: That the fifth claim of the Barker reissue patent is for a soldering apparatus consisting of a disc to melt and spread the solder, which disc is formed with a recess in its under side to give room for the convex lid of the can and confine the soldering process to the outer edge of the lid; this disc being in combination with

and mounted upon a rod movable independently of the disc, which rod holds the can-cap in place while the disc is moved down to the solder, and back and forth upon the solder, to melt and spread it evenly around the edge of the can-cap; and if the jury find that the defendant's soldering apparatus contains substantially such a disc, mounted upon substantially such a rod, the disc and rod operating substantially in the same manner as described in plaintiff's patent, and producing substantially the same results, the verdict must be for the plaintiff.

The second prayer is in regard to the Bostwick patent, and the plaintiff requests the court to give, and the court does give, this instruction: That the claim in the Bostwick patent is for a hollow soldering iron, having a handle, and having its lower rim beveled, in combination with a rod, located centrally within the hollow soldering iron, to guide the soldering iron properly to the cap to be soldered, and to hold the cap firmly till secured by the solder; and if the jury find that the defendant has used substantially such a soldering iron and rod, combined and operated substantially as described in the Bostwick patent, and producing substantially the same result, the verdict must be for the plaintiff. So, upon the question of the validity of the patent, and also to the question of infringement, the jury will find a verdict for the plaintiff.

The more important question is the question of damages; it has been stated by the counsel that this is one of a number of cases, and that it is to be treated as a test case for the purpose of obtaining a judicial determination by a jury of a fair measure of damages for the infringement of the patents, in order that the verdict of the jury and the judgment of the court in this case may be used in obtaining settlements with other infringers, and for ending other legal proceedings. Therefore it is necessary for the jury to consider very carefully what the damages are in this case, remembering that the public generally have some interest in the decision of the jury. The jury will notice that the only evidence in the case upon the subject of damages is proof of what saving results in that part of the process of manufacturing canned goods which consists in fastening the cover by solder, from the use of these ingenious inventions over the old process of using a soldering iron. The plaintiff has produced evidence from persons familiar with the business, and skilled in this manufacture, from which it appears that by the new process there is a saving of labor; that where, by the old process, a skilled workman could solder only 1,500 cans a day, under the new process a laborer less skilled can solder 4,000 cans a day, so that the actual saving resulting from diminished labor by the use of the new process over the old, amounts, according to the plaintiff's computation, to $1.20 per thousand cans. There is also evidence that by the patented operation there is a saving of solder, and less waste; and that where, under the old process, a pound of solder would be sufficient to seal or fasten only 80 cans, by the new process the same amount of solder will seal or fasten 150 or 160 cans. The plaintiff figures out, on this evidence, a saving of 75 cents per 1,000 cans in the quantity of solder used. Both together amount to $1.95 per 1,000 cans.

The only evidence in the case is that which I have called your attention to, and that is all the evidence before you from which you can compute the damages to which the plaintiff is entitled for the infringement. It is frequently the case that a license fee is established by the owner of a patent for the use of his invention, and that is ordinarily the basis upon which a jury estimate its verdict. But there is no evidence in this case of a license fee ever having been established by the plaintiff for these patents, or fixed by a court; and therefore the jury has no such evidence of that character to guide them. The jury have simply the saving which results from the use of the patented devices over the old process. Upon this evidence the jury are justified, if they see fit, in finding a verdict of $1.95 per 1,000 or $1.75 per 1,000, which was the amount suggested by the counsel for the plaintiff. There is no claim here that this amount should exceed $1.95 per 1,000 cans; and the jury therefore will be justified in finding that sum, or any other less sum which they think would be a fair compensation to the plaintiff for the infringement of his rights as the owner of the patents. I will read to you the prayer which the plaintiff has asked the court to give. I am requested to instruct you that the jury are to award the plaintiff a sum equal to the actual damage caused by the infringement; and in forming their estimate of damages they are to consider as evidence of such damages the amount of profits or savings made by the defendant by the use of the infringing device over what the defendant could have made by the use of tools free and open to the public use. And I instruct you that in accordance with that prayer you are to award the plaintiff an amount equal to his damage, and you are to consider as evidence the gains or savings made by the defendant by the use of the patented device. You are also to find the amount of the plaintiff's damages per 1,000 cans. The verdict which the clerk will hand to you will contain a memorandum of the number of cans on which the device has been used by the defendant,—50,000; and you are to fill the blank with the amount which you find the damage to be per 1,000 cans.